E. E. CORSON v. IOWA MUTUAL FIRE INSURANCE ASSOCIATION, Appellant.

**Mutual Fire Insurance Companies:** MUST ATTACH COPY OF APPLICATION TO POLICY. Code, chapter 4, section 1741, requiring all insurance companies to attach to the policy a copy of any application or representaton of the assured, by the terms of the

policy made a part thereof, etc., though not appearing in chapter 5, relating to mutual fire companies, and though that chapter provides (section 1759) that any number of persons may, without regard to the provisions of the preceding chapter, enter into contracts with each other for their insurance, applies to mutual fire companies.

FAILURE TO ATTACH COPY: *Consequences.* Under Code, chapter 4, section 1741, providing that no application or representation made by a person obtaining insurance shall be introduced in evidence unless a copy of such application or representation be attached to the policy, an insurer cannot show the falsity of statements contained in an application or representation where no copy thereof is attached to the policy.

COPYING HELD INSUFFICIENT. Under Code, chapter 4, section 1741, requiring insurance companies to attach a copy of any application or representation of the assured, made a part of the policy, and providing that no such application or representation shall be introduced in evidence unless so attached, a copy of an original application, stating the rate as "24" instead of "4-24 per cent." as in the application, entirely omitting the cash value and sum to be insured, though both were stated in the application, referring to the face of the policy for a description of the property insured, which description was specifically given in the application, and stating the material of roof of the building, which was not stated in the application, is not a sufficient copy of the application to entitle it to admission in evidence.

PROOF OF VALUE: *Instructions.* In an action on a fire policy an instruction as to the measure of plaintiff's recovery, stating that the valuation "should not be placed at what it might be under the evidence, but at what the evidence fairly shows it to be, if it is found that its value appears from the evidence," is not objectionable.

*Appeal from Shelby District Court.*—HON. W. R. GREEN, Judge.

FRIDAY, JANUARY 31, 1902.

ACTION upon a policy of fire insurance covering a stock of merchandise and store fixtures. There was a jury trial, resulting in a verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Wm. C. Miller* and *Sullivan & Sullivan* for appellant.

*Byers & Lockwood* for appellee.

Waterman, J.—Defendant is a mutual company, organized under section 1160, Code 1873, with its amendments, and the principal question discussed is whether it is subject to the requirements of section 1741, chapter 4, title 9, Code 1897. The determination of this issue will dispose of a number of minor matters which hinge upon it. That section is as follows: "All insurance companies or associations shall, upon the issue or renewal of any policy, attach to such policy, or indorse thereon, a true copy of any application or representation of the assured, which by the terms of such policy are made a part thereof, or of the contract of insurance, or referred to therein, or which may in any manner affect the validity of such policy. The omission so to do, shall not render the policy invalid, but if any company or association neglects to comply with the requirements of this section, it shall forever be precluded from pleading, alleging, or proving any such application or representation or any part thereof or the falsity thereof, or any parts thereof in any action upon such policy; and the plaintiff in any such action, shall not be required, in order to recover against such company or association, either to plead or prove such application or representation, but may do so at his option." This provision was originally enacted by the eighteenth general assembly, being chapter 211. In terms, it is broad enough to include every insurance company or association of individuals doing an insurance business of any kind. It has been applied to fire insurance companies (*Ellis v. Insurance Co.,* 64 Iowa, 507); to life insurance companies (*Cook v. Association,* 74 Iowa, 746); and to mutual benefit associations doing business on the assessment plan (*Newman v. Association,* 76 Iowa, 56;

*McConnell v. Association,* 79 Iowa, 757). The reasons for the requirement also would seem to make it apply to any and all kinds of companies. But in compiling the Code of 1897 this section was placed in a chapter (chapter 4) relating to companies of a different character from defendant, and in the chapter (chapter 5) of the same title devoted to the organization and government of mutual companies no such provision appears. It does appear however, in substance, also in the chapter (chapter 8, section 1819) relating to ordinary life insurance companies, and also in that covering mutual benefit insurance (chapter 9, section 1826). This omission of the provision in chapter 5, together with certain language in said chapter contained, and to which we shall soon call attention, is thought to indicate that the terms of section 1741 were not to apply to mutual companies of defendant's class. In adopting section 1741, the general assembly re-enacted a statute in the exact terms in which it had been held by this court to apply to all insurance companies. We cannot, upon mere implication, say that body intended to shear it of any force it had when so made use of. Nor does the fact that it was given a place in other chapters, where, under its former construction it would be superfluous, amount to anything more than an argument which is met by the broad terms of the section, and overcome, when we add to the language of this law the apparent reasons for its enactment, which apply equally to all kinds of insurance companies. There is, however, in chapter 5, which relates to the organization of mutual fire insurance companies, this language: "Any number of persons may without regard to the provisions of the preceding chapter, enter into contracts to and with each other for their insurance from loss or damage from fire, etc." Section 1759. It is thought that this language exempts mutual companies from any of the provisions of chapter 4, title 9, of the present Code. Substantially the language of section 1759 is to be found in the Code of 1873, and yet, in *Brad-*

*ford v. Insurance Co.,* 112 Iowa, 495, we held that prior
to the Code of 1897 mutual fire insurance companies were
subject to another provision of chapter 211, Acts Eighteenth
General Assembly, relating to the time of bringing actions
on policies. That it was the intention of the general assem-
bly to exempt this class of mutual companies from many of
the provisions of chapter 4, title 9, must be admitted. This
is apparent from the fact that such provisions are inconsist-
ent with the character and object of such companies; for
instance, the method of organization of stock companies and
certain general mutual companies, the provisions as to capi-
tal, subscriptions to stock, dividends, annual reports, etc.
These do not relate to companies of the character of defend-
ant, and, under section 1759, are expressly made not to
apply to them. On the other hand, notwithstanding section
1759, it must be conceded that some provisions of the pre-
ceding chapter do apply to mutual companies, as, for exam-
ple, section 1690, which reads: "No company shall be
organized to do business upon both stock and mutual plans;
nor shall a company organized as a stock company do busi-
ness upon the plan of a mutual company; nor shall a com-
pany organized upon the mutual plan, do business or take
risks upon the stock plan." All of the provisions of chapter
4 relate to the method of organization, management, and
supervision of companies different in character from those
provided for in chapter 5, save sections 1741-1744, inclu-
sive, and, except section 1743, these are taken from chapter
211, Acts Eighteenth General Assembly, and all of them
relate to the general manner of doing insurance business,
and making proofs and bringing suit, in case of loss. Chap-
ter 4, with the exception of the four sections mentioned,
clearly ought not to apply to companies organized as defend-
ant was, and, just as clearly, the four sections should. They
relate to general matters concerning all kinds of companies
alike, and, when given a place in the Code of 1897, the

three which were taken from a former law did so apply. Appellant claims the matter under discussion has already been settled by decisions of this court. We pass now to the cases relied upon: *State v. Iowa Mut. Aid Ass'n,* 59 Iowa, 125, has no reference to chapter 211, Acts Eighteenth General Assembly. It holds only that two sections of the Code of 1873, relating solely to methods of organization (sections 1161-1163) did not apply to companies organized under section 1160, which was the equivalent of present section 1759. In *Corey v. Sherman,* 96 Iowa, 114, in the fourth paragraph of the opinion, some language is used which, upon its face, supports appellant's contention. Speaking of a certain provision of section 1146, Code 1873, relating to premium notes, and which provision is now a part of chapter 4, title 9, Robinson, J., who delivers the opinion, says it does not apply to companies organized as defendant here was, for that the chapter in which section 1146 appears has no reference to such mutual companies. It will be noticed that now, as well as under the Code of 1873, the law provides for the organization of two kinds of mutual companies, not at all clearly distinguishable in character, save, perhaps by their methods of doing business. At present one may be organized under chapter 4, the other under chapter 5, title 9, of the Code. Had it not been for certain concessions of counsel, it may well be questioned whether the company in the *Corey-Sherman Case* would have been placed in the latter class. But, however that may be, the language relied upon by counsel as used by the court in that case was unnecessary, for the issue to which it was applied had already been disposed of on another ground. The case of *Beeman v. Association,* 104 Iowa, 83, is also relied upon by appellant. This case involves the application of chapter 210, Acts Eighteenth General Assembly, to companies or-

ganized as defendant was.   This is a different provision from the one under consideration. · But if *Corey v. Sherman* had decided the question broadly that, under section 1160, Code 1873, general provisions as to insurance companies would not apply to mutual association organized under that section, the *Beeman Case* could have been disposed of simply by following it. This was not done.   On the contrary, it was held that chapter 210, Acts Eighteenth General Assembly, did not rule mutual companies like defendant here, because it applied to a method of doing business which they were prohibited from pursuing. We do not think the question under consideration has been previously passed upon by this court.   Our conclusion is that section 1741 of the Code applies, as it says, to all insurance companies and associations whatever.

There is a question not discussed by counsel, so we suggest rather than decide it.   Companies organized under chapter 5, title 9, of the Code, are given no express authority to take premiums or premium notes.   The defendant, under the name of a "deposit," exacted a premium, and, under the name of a "deposit note," took a premium note, from its policy holders.   By thus doing business as an ordinary mutual company, did it not forfeit any protection it is claimed to have under section 1759 ?   See *Bradford v. Insurance Co., supra.*

II.   Applying the rule of section 1741, the trial court refused to admit in evidence an application made by plaintiff for this insurance, because a copy thereof was not indorsed upon the policy.   It is insisted by defendand that a copy was in fact indorsed on the policy, and, even if section 1741 applies, the court was in error.   We set out so much of the original application and indorsed copy as will show the variances, which appellant says are not substantial:

| (Original Application.) | | (Copy attached to Policy.) | |
|---|---|---|---|
| "Rate per cent, 4-24 per cent. | | "Rate per cent. 24. | |
| Cash Value. | Sum to be insured. | Cash Value. | Sum to be insured. |
| $3,000. | $1,500. | $—— | $—— |

On general stock of merchandise, consisting principally of dry goods, clothing, boots and shoes, groceries, hats, caps, notions, and such other goods as are usually kept for sale in a retail store, including store furniture and fixtures.

1. Material of building? F.
2. Size? 25 by 80 feet. When built? 1887.
6. Material of roof? X."

On_____
On_____
On—(See form on face of policy.)
On_____
On_____
On_____
On_____
1. Material of building? Frame.
2. Size? 25 by 80 feet. When built? 18—.
6. Material of roof? Shingle."

The differences here were such that construction would have to be resorted to in order to determine whether the terms were the same. What was on the policy was therefore not a copy of the original, within the meaning of the statutory requirement. *Seiler v. Association,* 105 Iowa, 87; *Johnson v. Insurance Co.,* 105 Iowa, 273.

III. As we understand counsel for appellant, they contend that, even though the application was not admissible in evidence, they should still have been allowed to show the falsity of the statements therein. This would be a clear violation of the terms of section 1741.

IV. We think the trial court did right in submitting to the jury but the two questions: (1) Whether plaintiff swore falsely, in making proofs of loss, as to the value of the property destroyed; and (2) the value of the burned property. Upon these questions, there was a conflict of evidence, and the verdict of the jury is conclusive upon us.

V. The fifth paragraph of the court's charge relates to the measure of plaintiff's recovery and the proper method of ascertaining or fixing it. The concluding sentence of this instruction, which is complained of, is as follows: "This valuation should not be placed at what it might be under the evidence, but what the evidence

fairly shows it to be, if you find its value appears from the evidence." The only reasonable construction that can be given this language is that it cautions the jury against going to extremes, and advises them that their verdict should have fair support in the evidence. This certainly was proper.

We discover no error, and the judgment is AFFIRMED.